IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

No. 22-13930-HH

———————————————

UNITED STATES OF AMERICA,

Appellee,

v.

J. CORTERO-ROMAN,

Appellant.

———————————————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

———————————————————————————

INITIAL BRIEF

———————————————————————————

A. Fitzgerald Hall, Esq.
Federal Defender

Conrad Benjamin Kahn, Esq.
Assistant Federal Defender
Appellate Division
Florida Bar No. 104456
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-6338
Email: Conrad_Kahn@fd.org

# Appeal No. 22-13930-HH

## *United States of America v. Cortero-Roman*

### CERTIFICATE OF INTERESTED PERSONS

The persons listed below are interested in the outcome of this case:

Baker, The Honorable David A.

Cortero-Roman, J. Cruz

Hall, A. Fitzgerald

Handberg, Roger B.

Hoppmann, Karin

Kahn, Conrad Benjamin

Kidd, The Honorable Embry J.

Laurie, Shannon

Lukman, Joshua Roy

Mendoza, The Honorable Carlos E.

Reyes, Karla Mariel

Rhodes, David P.

Taylor, Michelle Thresher

**Appeal No. 22-13930-HH**

*United States of America v. Cortero-Roman*

<span style="font-variant: small-caps;">Certificate of Interested Persons — *Continued*</span>

No publicly traded company or corporation has an interest in the outcome of this appeal.

Mr. Cortero-Roman pled guilty to illegally reentering the country. He was discovered by ICE officials after he was arrested for domestic battery—a charge that the state eventually nolle prossed. At sentencing, his advisory Guidelines range was 8-to-14 months. Mr. Cortero-Roman asked for a sentence of 1 year and 1 day. The government and Probation asked for a high-end sentence of 14 months' imprisonment.

The district court, however, called the alleged victim in the nolle prossed case as a witness and then, based on its own speculation about her testimony, imposed a 15-*year* sentence—an upward variance of more than 1250% above the top of the Guidelines range. Moreover, in imposing that sentence, the court relied on several factual findings that were unsupported by the record.

This case presents the questions of whether the district court violated Mr. Cortero-Roman's due process rights when it called the alleged victim and whether it imposed an unreasonable sentence. Mr. Cortero-Roman respectfully submits that argument by counsel familiar with the record and issues will help the Court resolve this appeal.

## TABLE OF CONTENTS

Certificate of Interested Persons ............................................................ C1

Statement Regarding Oral Argument ........................................................i

Table of Citations ......................................................................................... v

Statement of Jurisdiction........................................................................... ix

Statement of the Issues............................................................................... 1

Statement of the Case ................................................................................. 1

Course of Proceedings and Disposition in the Court Below ..................... 1

Statement of the Facts ................................................................................ 2

    A.    ICE officials discover that Mr. Cortero-Roman unlawfully reentered the country after deportation. ............. 2

    B.    Mr. Cortero-Roman pleads guilty to illegal reentry.............. 2

    C.    Probation prepares a presentence investigation report and recommends that the district court impose a fourteen-month term of imprisonment................................... 3

    D.    Mr. Cortero-Roman objects to Probation's reliance on the arrest affidavit from the domestic battery arrest. ........... 4

    E.    The government, like Probation, recommends a 14-month sentence, but the district court continues the sentencing to consider whether to impose an upward variance. ............................................................................... 6

F.      The State nolle prosses the domestic battery charge, but the district court nevertheless imposes a 15-year sentence, a significant upward variance of more than 1250% above the top of Mr. Cortero-Roman's Guidelines range. ..................................................................... 11

Standards of Review .............................................................. 15

Summary of the Argument ................................................... 16

Argument and Citations of Authority .................................. 19

I.      The district court departed from its neutral role, in violation of Mr. Cortero-Roman's right to due process, when it called Abassian as a witness, asked her whether she was honest with law enforcement, expressed dismay at the State's prosecutorial decisions, and made speculative assumptions from Abassian's testimony to justify an upward variance of more than 1250% above the top of Mr. Cortero-Roman's Guidelines range. .............. 19

      A.     The Legal Standard ..................................................... 19

      B.     The district court departed from its neutral role, in violation of Mr. Cortero-Roman's due process rights ......................................................................... 22

II.     The district court committed plain procedural error when it relied on clearly erroneous facts to impose a sentence that was more than 1250% above the high-end of Mr. Cortero-Roman's Guidelines range. ........................... 26

III. The district court's upward-variance sentence, which was more than 1250% above the high-end of the Guidelines range, is substantively unreasonable. ............... 32

IV. This Court should reassign the case to another judge on remand ............................................................. 38

Conclusion ................................................................. 40

Certificate of Compliance ........................................... 41

Certificate of Service ................................................. 41

# TABLE OF CITATIONS

CASES                                                                                      PAGE(S)

*Chapman v. California*, 386 U.S. 18 (1967)..........................................................25

*Davis v. United States*, 140 S. Ct. 1060 (2020) .......................................31

*Gall v. United States*, 552 U.S. 38 (2007) ...................................33, 35, 37

*Gardner v. Fla.*, 430 U.S. 349 (1977) ......................................................20

*Kimbrough v. United States*, 552 U.S. 85 (2007)............................33, 35

\* *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ................................19, 20

*Quercia v. United States*, 289 U.S. 466 (1933)........................................20

*Shannon v. United States*, 39 F.4th 868 (7th Cir. 2022) .......................20

*Tumey v. State of Ohio*, 273 U.S. 510 (1927) .........................................25

*United States v. Alfaro,* 336 F.3d 876 (9th Cir. 2003) ...........................20

*United States v. Atwood*, 941, F.3d 883 (7th Cir. 2019) .......................21

*United States v. Barner*, 572 F.3d 1239 (11th Cir. 2009).................26, 31

*United States v. Clay*, 483 F.3d 739 (11th Cir. 2007)............................36

*United States v. Cochran*, 955 F.2d 1116 (7th Cir. 1992)......................21

*United States v. Cubero*, 754 F.3d 888 (11th Cir. 2014)........................15

\* *United States v. Gupta*, 572 F.3d 878 (11th Cir. 2009) ..........................39

CASES                                                                 PAGE(S)

*United States v. Hawkins*, 934 F.3d 1251 (11th Cir. 2019) ................... 31

\* *United States v. Horta-Alvarez*,

    712 F. App'x 913 (11th Cir. 2017) ........................................... 26, 31

*United States v. Irey*, 612 F.3d 1160, (11th Cir. 2010) .......................... 33

*United States v. Johnson*, 503 F. App'x 901 (11th Cir. 2013) ............... 20

*United States v. Kendrick*, 22 F.3d 1066 (11th Cir. 1994) .............. 26, 31

*United States v. Lopez*, 343 F. App'x 484 (2009) ............................ 36, 37

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016) ...................... 21

*United States v. Nash*, 438 F.3d 1302 (11th Cir. 2006) ......................... 15

*United States v. Ochoa-Molina*, 664 F. App'x 898 (11th Cir. 2016) ....... 37

*United States v. Olano*, 507 U.S. 725 (1993) ......................................... 15

\* *United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020) ...... 34, 35

*United States v. Rowan*, 510 F. App'x 870 (11th Cir. 2013) ................... 19

*United States v. Sanchez*, 586 F.3d 918 (11th Cir. 2009) ....................... 15

\* *United States v. Torkington*, 874 F.2d 1441 (11th Cir. 1989) .......... 38, 39

CASES                                                                    PAGE(S)

*United States v. Velasquez-Velasquez,*

    524 F.3d 1248 (11th Cir. 2008) ......................................................30

**STATUTES, RULES, AND GUIDELINES**

8 U.S.C. § 1326(a) ...............................................................................1, 2

8 U.S.C. § 1326(b) ...............................................................................1, 2

18 U.S.C. § 3231 .....................................................................................ix

18 U.S.C. § 3553(a) ..........................................................................15, 32

18 U.S.C. § 3661 ......................................................................................6

18 U.S.C. § 3742 .....................................................................................ix

28 U.S.C. § 1291 .....................................................................................ix

28 U.S.C. § 1294 .....................................................................................ix

28 U.S.C. § 2106 ....................................................................................38

Fed. R. Evid. 614(b) ..............................................................................20

USSG § 1B1.4 ...........................................................................................6

USSG § 6A1.3(a) ......................................................................................6

**OTHER AUTHORITIES**                                                                   **PAGE(S)**

\* U.S. Sentencing Comm'n,

    Quick Facts: Illegal Reentry Offenses ............................... 34, 35, 37

## STATEMENT OF JURISDICTION

This is a direct appeal in a criminal case. The United States District Court, Middle District of Florida, Orlando Division, had original jurisdiction under 18 U.S.C. § 3231. The district court entered its final judgment on November 8, 2022. Doc. 54. Mr. Cortero-Roman filed a timely notice of appeal. Doc. 56. Jurisdiction now lies with this Court. 18 U.S.C. § 3742; 28 U.S.C. §§ 1291, 1294.

**STATEMENT OF THE ISSUES**

1.     Did the district court violate Mr. Cortero-Roman's due process rights during sentencing when it called the alleged victim in a case the State of Florida nolle prossed and substantially relied on its own speculation about her testimony to justify an upward variance of more than 1250% above the top of the Guidelines range?

2.     Did the district court commit plain procedural error when it relied on multiple clearly erroneous facts in its decision to vary upward?

3.     Was the district court's upward-variance sentence substantively unreasonable?

4.     If this Court vacates Mr. Cortero-Roman's sentence and remands this case for resentencing, should it also reassign this case to a different district court judge?

**STATEMENT OF THE CASE**

**Course of Proceedings and Disposition in the Court Below**

The district court imposed a fifteen-year prison sentence after Mr. Cortero-Roman pled guilty to illegally reentering the country after deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Doc. 54.

1

## Statement of the Facts

### A.  ICE officials discover that Mr. Cortero-Roman unlawfully reentered the country after deportation.

In October 2011, Immigration and Customs Enforcement (ICE) removed Mr. Cortero-Roman from the country for the third time.  Doc. 51 at 4.  Sometime after that, Mr. Cortero-Roman reentered the country.  *Id.*  ICE officials discovered him in the Orange County jail after law enforcement arrested him for domestic battery.  *Id.*

### B.  Mr. Cortero-Roman pleads guilty to illegal reentry.

Mr. Cortero-Roman pled guilty to illegally reentering the country after deportation, in violation of §§ 1326(a) and (b)(2).  Doc. 65.  During the change of plea hearing, Mr. Cortero-Roman was advised that he faced a maximum term of twenty years in prison.  *Id.*[1]

---

[1] The offense of illegal reentry usually carries a maximum penalty of two years in prison.  8 U.S.C. § 1326(a).  But the maximum is increased to 10 years if the defendant has a prior felony conviction and 20 years if he has a prior "aggravated felony" conviction.  8 U.S.C. § 1326(b).  Here, the indictment alleged that Mr. Cortero-Roman had a prior "felony" conviction from over twenty years ago—a 2002 Florida conviction for aggravated assault with a deadly weapon—but cited the "aggravated felony" provision in § 1326(b)(2).  Doc. 18.

**C. Probation prepares a presentence investigation report and recommends that the district court impose a fourteen-month term of imprisonment.**

In anticipation of sentencing, Probation prepared a presentence investigation report. In it, Probation discusses Mr. Cortero-Roman's background and criminal history.

Mr. Cortero-Roman was born in Mexico. Doc. 44 at 14–15. His mother left for the United States when he was a baby, and when he was around eight, he moved to Apopka, Florida to reunite with her. *Id.* He went to school and grew up in Apopka and generally lived in a middle-class environment. *Id.* To this day, most of his immediate family still lives in the area—his mother and stepfather still live there, and his siblings live in the area. *See id.* He is close with all of them. Mr. Cortero-Roman also has four children from three relationships. *Id.* He talks to his children regularly and helps with childcare expenses. *See id.*

As for his criminal history, Probation noted that Mr. Cortero-Roman had convictions for aggravated assault with a deadly weapon, battery, domestic battery, and possession of marijuana. *Id.* at 7–11. But these convictions are so old that they did not receive criminal history

points. *See id.*[2] Probation also noted that ICE had deported Mr. Cortero-Roman three times, in 2004, 2005, and 2011. *Id.* at 4.

Finally, Probation calculated that Mr. Cortero-Roman had a total offense level of 10, a criminal history category of II, and a Guidelines range of 8-to-14 months' imprisonment. *Id.* at 17. Probation recommended a 14-month term of imprisonment. *Id.* at 40–41. It noted a high-end sentence was justified to ensure deterrence and respect for the law, as well to account for the nature and circumstances of the offense and his criminal history. *Id.*

## D. Mr. Cortero-Roman objects to Probation's reliance on the arrest affidavit from the domestic battery arrest.

In a section of the PSR labeled "pending charges," Probation summarized an arrest affidavit relating to Mr. Cortero-Roman's arrest for domestic battery, which ultimately led to his prosecution for the instant illegal reentry offense. *Id.* at 13–14. According to the arrest affidavit, law enforcement responded to a call from Jennifer Abassian,

---

[2] Mr. Cortero-Roman has only one conviction recent enough to earn criminal history points, and that was for illegal reentry. Doc. 44 at 10–11.

Mr. Cortero-Roman's romantic partner and the mother of one of his children, who alleged that Mr. Cortero-Roman struck her in the chest and face and that he had sex with her against her will. *Id.*[3] Abassian told law enforcement that although she wanted to press charges for domestic battery, and although she stated Mr. Cortero-Roman had sexually assaulted her before, she did not want to press charges for sexual assault. *Id.* She said she did not want to subject herself to "another extensive sex crime investigation." *Id.*

Mr. Cortero-Roman objected to Probation's reliance on the arrest affidavit. *Id.* at 35–36. He argued that the district court should not rely on the factual narrative in the presentence report because he had not been adjudicated guilty of the alleged offense. *Id.* Probation, however,

---

[3] According to the PSR's summary of the arrest report, Abassian said she noticed Mr. Cortero-Roman drinking with his cousin in her backyard and told them to leave. Mr. Cortero-Roman asked Abassian for a ride to his cousin's house, and she obliged, bringing her son along. While in the car, Mr. Cortero-Roman asked to return to Abassian's house, and he became angry when she refused; he grabbed the wheel of the car, causing it to swerve off the road, and he hit her in the face and chest. When they returned to Abassian's home, he took the car keys, told her to go inside, and later forced himself on her. Doc. 44 at 13–14.

responded that the information was reliable and that it provided the narrative so the district court would have an adequate description of Mr. Cortero-Roman's criminal history. *Id.* (citing 18 U.S.C. § 3661 and USSG §§ 1B1.4, 6A1.3(a)).

**E.    The government, like Probation, recommends a 14-month sentence, but the district court continues the sentencing to consider whether to impose an upward variance.**

Before sentencing, Mr. Cortero-Roman filed several letters of support, including one from Abassian and one from Francisco Davalos Merino, his lawyer in Mexico.   Doc. 46-1 at 4.   In Abassian's letter, she said she believed that Mr. Cortero-Roman is "kind-hearted, generous[,] and a hard worker," but his life was marred by substance abuse and bad influences.  *Id.*  She said with treatment, she believed he could be a great partner and parent.   She asked the district court not to deport him because it was not safe for him in Mexico and to impose a lenient sentence so he has a chance to change for the better.  *Id.*

Merino's letter corroborated that Mr. Cortero-Roman would be in danger if deported to Mexico.  Doc. 46-1 at 1–2.  Merino explained that he helped Mr. Cortero-Roman obtain an acquittal in a homicide case in

which Mr. Cortero-Roman had acted in self-defense. *Id.* According to Merino, Mr. Cortero-Roman had owned two stores in Mexico and was being extorted by a man named Vicente Gonzalez Ruiz. *Id.* One day, Mr. Cortero-Roman refused to give Ruiz money, Ruiz attacked him, and Mr. Cortero-Roman shot Ruiz in self-defense. *Id.* Merino stated that Mr. Cortero-Roman had told him several times that his life was in danger because Ruiz's associates would search for him throughout Mexico.

During the sentencing hearing, the court overruled Mr. Cortero-Roman's objections and stated that it would consider the controverted factual statements in the presentence report. Doc. 49 at 5–6. Mr. Cortero-Roman called David Stoller, a board-certified immigration attorney, as a witness. *Id.* at 9. Stoller testified that after these proceedings, Mr. Cortero-Roman would have a chance to ask an immigration official to withhold his removal based on his reasonable fear of being harmed because of his race, religion, nationality, political belief, or membership in particular social group. *Id.* at 9–12.

Mr. Cortero-Roman, for his part, explained that he is "fiercely adored" and supported by his family, who, along with Abassian, were in

attendance on his behalf. *Id.* at 14. Mr. Cortero-Roman acknowledged the "elephant in the room"—that he had a pending domestic violence charge involving Abassian—but he noted that there had not yet been any factual determination about whether he committed that offense and he was still presumed innocent. *Id.* He therefore asked the district court not to put undue weight on that pending charge. *Id.*

He also explained that he stayed in Mexico for ten years after his last deportation—from 2011 to 2021—and after being extorted by the Mafia and being acquitted of any wrongdoing, he went into hiding, staying with friends and in hotels. *Id.* at 15. That is why, he explained, he returned to the country. He knew he should not have, "but he did out of necessity." *Id.* That said, he accepted responsibility for his offense and openly pled guilty. *Id.*

The government declined to put on any evidence in support of an aggravated sentence, *id.* at 13, but it, like Probation, recommended a high-end Guideline sentence of 14 months' imprisonment. *Id.* at 16–17. The government emphasized that Mr. Cortero-Roman had been deported three times, including a 30-month term of imprisonment for his last

illegal reentry. *Id.* The government also noted that Mr. Cortero-Roman had convictions for violent offenses, including aggravated assault and domestic battery; the government also noted that he also previously attempted to evade law enforcement, including providing false information about his identity. *Id.* Finally, the government noted that it had spoken with Abassian, and although she did not want to provide a statement or pursue the pending state charges, she was not disputing the allegations. *Id.*

The district court expressed concern about the allegations underlying Mr. Cortero-Roman's pending domestic-battery offense and his criminal history. *Id.* at 18–23. The court acknowledged that some people who illegally reenter the country do so for noble reasons, but Mr. Cortero-Roman, it explained, has been "in trouble nonstop" since he arrived. *Id.* at 18–19. The court recounted Mr. Cortero-Roman's criminal history in detail. It also explained it would rely on the allegations underlying the pending domestic violence charge, giving it "the same weight as everything else." *Id.* at 19–23. The court then explained that in state court, alleged victims of sexual assault face a lot—they must

undergo an invasive rape-kit test, they are subject to deposition by defense counsel, they may need to testify in court and be subject to cross-examination. *Id.* at 23–24. He sympathized with Abassian's desire to not want to go through a sex investigation. *Id.*

The district court made its concern clear, stating that "every red flag is going off here." *Id.* at 25. Although Mr. Cortero-Roman was supported by loving people, the court found that he was a dangerous person who had done "nothing but commit violent crimes against people." *Id.* The court also said it knew that once Mr. Cortero-Roman was deported, he was simply going to break the law again by illegally reentering the country. *Id.*

The district court said that it intended to impose a significant upward variance and asked defense counsel if she would like to continue the hearing so she could gather and present more evidence in support of Mr. Cortero-Roman. *Id.* at 25–26. Defense counsel took the court up on its offer. *Id.*

**F. The State nolle prosses the domestic battery charge, but the district court nevertheless imposes a 15-year sentence, a significant upward variance of more than 1250% above the top of Mr. Cortero-Roman's Guidelines range.**

Before the next sentencing hearing, the State nolle prossed the domestic battery charge, and Probation issued an updated presentence report to reflect the change. Doc. 51 at 13. During the hearing, defense counsel told the district court about the nolle pross and argued that it should weigh heavily in the court's consideration of an appropriate sentence. Doc. 66 at 4. Defense counsel also advised the court that Mr. Cortero-Roman and Abassian had resumed their relationship. *Id.*

After the government declined to put on any new evidence, the district court, in a move itself recognized was "a little unorthodox," called Abassian as a witness and had her placed under oath. *Id.* at 4–5. The court recognized that Abassian requested leniency but asked whether she stood behind the statements she made in her letter and to law enforcement. Specifically, the district court asked her: "[Y]ou also indicated in the letter that you stood behind the underlying allegations, and you told the officers you didn't want to go through this process again.

So you stand behind these underlying allegations?" *Id.* at 5. Abassian confirmed that she stood behind her statements but again asked the court for leniency, stating that "I know he is a changed man" and that "[h]e can do things right." *Id.* at 5–6.

Based largely on its exchange with Abassian, the district court sentenced Mr. Cortero-Roman to 15-years in prison. *Id.* at 6–12. In pronouncing the sentence, the court began by stating that Mr. Cortero-Roman was not like other illegal reentry defendants who are otherwise law abiding; he was someone who illegally reentered the country and victimized people. *Id.* at 7–8. The court said that although it "kind of knew" what direction it was headed in before the hearing, it was "floored" by Abassian's testimony. *Id.* at 8.

The court said it had a long history with these types of cases, both as a prosecutor, defense lawyer, and a judge, and knew, based on her statements to law enforcement, what she had been through. *Id.* He also expressed concern that Abassian was receiving emotional support from Mr. Cortero-Roman's family because they were probably lobbying her on his behalf. *Id.* at 8–9.

The district court then returned to Abassian's statement to law enforcement that she did not want to go through another sex crime investigation. *Id.* at 9. The court sympathized with Abassian, stating that "the system ha[d] chewed [her] up and spit [her] out." *Id.* The court also expressed concern that Abassian would be jeopardizing the safety of her child by participating in the state prosecution, including subjecting herself to deposition. *Id.* ("I know that process, and I know it well. So I don't blame you for not having confidence in it.").

The district court then turned to its "last determination"—the defendant. *Id.* The court said that "there has not been a time period in his adult life where he hasn't been committing . . . violent crimes." *Id.* at 10. The court again recounted his criminal history, as well as the fact that he received nine disciplinary infractions while incarcerated and that he was a member of a gang. *Id.* The court also noted that when he was a minor, he was in a gang fight and kicked an arresting officer. *Id.*

The district court ultimately concluded that Mr. Cortero-Roman was "not going to change." "He is who he is." *Id.* The court also suggested that "fear" motivated Abassian's request for leniency. *Id.* at 11. But the

court determined that it was not going to let Abassian "get chewed up and spit out again." *Id.* The court found that Mr. Cortero-Roman is dangerous. *Id.* It also found that Mr. Cortero-Roman committed the acts underlying the nolle prossed charge, which it said were unspeakable. *Id.* The court also expressed dismay that the State nolle prossed the charges and stated that if it were the prosecutor, it would have persuaded Abassian to go forward. *See id.* at 11 ("I don't know how a prosecutor could look themselves in the mirror in state court and drop these charges, because I would convince you to go forward . . . ."). The state prosecutor, the court opined, had left Abassian completely unprotected. *Id.* The court said it believed Abassian was trying to create a situation in which it would not happen again and stated it would "do everything [it could] to keep it from happening again." *Id.* The court then sentenced Mr. Cortero-Roman to 15 years in prison. *Id.* Mr. Cortero-Roman objected that the sentence was substantively unreasonable, and the court noted that his objection was preserved. *Id.* at 12.

## STANDARDS OF REVIEW

This Court reviews the constitutionality of a sentence de novo. *See United States v. Sanchez*, 586 F.3d 918, 932 (11th Cir. 2009). This Court reviews the reasonableness of a sentence for an abuse of discretion using a two-step process. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). First, it looks at "whether the district court committed any significant procedural error," which includes "selecting a sentence based on clearly erroneous facts." *Id.* If this Court determines the sentence is procedurally sound, it next examines "whether the sentence is substantively unreasonable under the totality of the circumstances and in light of the [18 U.S.C.] § 3553(a) factors." *Id.*

This Court reviews issues raised for the first time on appeal only for plain error. *United States v. Nash*, 438 F.3d 1302, 1304 (11th Cir. 2006). To reverse under the plain-error standard, there must be (1) an error, (2) that is plain, and (3) that affected the defendant's substantial rights. If those requirements are met, this Court may correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

The district court violated Mr. Cortero-Roman's right to due process during sentencing when it called Abassian as a witness. Although courts can call witnesses, there are limits to that power. Among other things, courts cannot depart from their neutral role and assume the role of a prosecutor.

Here, the district court departed from its neutral role. After the government made a recommendation for a 14-month sentence and declined to put on any more argument or evidence in aggravation, the district court called Abassian and asked her whether she stood by her allegations in the police report. Then, based on Abassian's testimony, the district court made speculative assumptions to justify an extreme upward variance of more than 1250% above the high-end of the Guidelines. Among other things, the district court found that Abassian's request for leniency was motivated by fear because Mr. Cortero-Roman's family was likely lobbying her and because the state criminal justice system had "chewed her up and spit her out." The district court also strongly criticized the state's prosecutorial decisions and stated that had

it been the state prosecutor, it would have convinced Abassian to go forward. The district court then, based on a professed desire to protect Abassian, imposed a 15-year prison sentence. The district court's actions violated Mr. Cortero-Roman's right to due process.

The district court also committed plain procedural error because it relied on clearly erroneous facts when selecting the upward variance sentence. Among other things, the court found that Abassian actions were motivated by fear, that Mr. Cortero-Roman's family was likely lobbying her, that Mr. Cortero-Roman had been committing violent offenses non-stop his entire adult life, and that Mr. Cortero-Roman would eventually illegally reenter again and commit more crimes. There was no record support for these findings. Yet the district court relied on these facts as aggravators to justify a substantial upward variance. Because the district court plainly erred in doing so, and because, at the very least, the cumulative effect of these error prejudiced Mr. Cortero-Roman, this Court should vacate his sentence and remand this case for resentencing.

This district court's upward variance sentence is also substantively unreasonable. Because Mr. Cortero-Roman's case is a mine-run illegal

reentry case, the district court's justifications for its upward variance are subject to closer scrutiny. But the district court's justifications cannot withstand that scrutiny. The district court placed too much weight on Mr. Cortero-Roman's criminal history and its desire to protect Abassian, and it imposed a sentence that is far greater than necessary to satisfy the statutory purposes of sentencing. Because the district court made a clear error in judgment in considering and weighing the relevant factors, it imposed a substantively unreasonable sentence.

Finally, this Court should exercise its supervisory authority and assign this case to a different judge on remand. As explained, the district court judge departed from his role of neutrality during the last sentencing, made several unsupported factual findings, and imposed a sentence that was far greater than necessary. At a minimum, the district court judge's actions created the appearance of partiality, and his continued participation would undermine the public's perception of the proceedings. This Court should therefore reassign this case to a different judge for resentencing.

**I.     The district court departed from its neutral role, in violation of Mr. Cortero-Roman's right to due process, when it called Abassian as a witness, asked her whether she was honest with law enforcement, expressed dismay at the State's prosecutorial decisions, and made speculative assumptions from Abassian's testimony to justify an upward variance of more than 1250% above the top of Mr. Cortero-Roman's Guidelines range.**

The district court departed from its neutral role and violated Mr. Cortero-Roman's right to due process when it, among other things, called Abassian as a witness, essentially asked her whether she had told the truth or had lied to law enforcement, stated that the state prosecutor should be ashamed from dropping the charge and that he would have continued the prosecution, and made speculative assumptions from Abassian's testimony to justify an extreme upward variance of more than 1250% above the top of Mr. Cortero-Roman's Guidelines range.

**A.     The Legal Standard**

The Due Process Clause entitles defendants to an impartial and disinterested tribunal during sentencing. *See United States v. Rowan*, 510 F. App'x 870, 872 (11th Cir. 2013) (quoting *Marshall v. Jerrico, Inc.*,

446 U.S. 238, 242 (1980)); *United States v. Johnson*, 503 F. App'x 901, 905 (11th Cir. 2013); *see also Gardner v. Fla.*, 430 U.S. 349, 358 (1977) (recognizing that the sentencing process "must satisfy the requirements of the Due Process Clause"). This neutrality requirement preserves both the appearance and reality of fairness and ensures that every defendant will have an arbiter who is not predisposed to finding against him. *Marshall*, 446 U.S. at 242.

A sentencing judge does not violate the Due Process Clause simply by calling a witness to clear up confusion or to supplement (in an impartial way) the presentation of a poorly prepared lawyer. *See United States v. Alfaro,* 336 F.3d 876, 883 (9th Cir. 2003) (relying on *Quercia v. United States*, 289 U.S. 466, 470 (1933), and Fed. R. Evid. 614(b)).[4] That

---

[4] Mr. Cortero-Roman acknowledges that Rule 614(b) and some cases cited here address judicial bias that allegedly occurred during a trial rather than sentencing. He also acknowledges that the sentencing context differs from a trial. For example, at a sentencing, the rules of evidence do not apply, there is no jury, and there is no presumption of innocence. That said, defendants still have a due process right to a neutral and unbiased sentencing judge. Indeed, impartiality is particularly important in sentencing given the broad discretion judges are afforded. *See Shannon v. United States*, 39 F.4th 868, 885 (7th Cir. 2022) (explaining that the broad discretion sentencing courts have

said, a court's decision to call a witness is, as the sentencing court acknowledged here, "a little unorthodox," Doc. 66 at 4, and courts do it only in the rarest of circumstances. *See United States v. Cochran*, 955 F.2d 1116, 1122 (7th Cir. 1992) ("Although authorized by the Federal Rules of Evidence, the use of a court's witness is rare."). And it makes sense that sentencing courts rarely call their own witnesses given the limitations the Due Process Clause place on a court's intervention.

A sentencing court's participation must be balanced. The court cannot assume the role of a prosecutor, seek to produce evidence that the government has declined to present, or otherwise use its powers to disadvantage a party. *See United States v. Morrison*, 833 F.3d 491, 508 (5th Cir. 2016). Rather, a sentencing court must maintain objectivity, be

---

"invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes" (quoting *United States v. Atwood*, 941, F.3d 883. 885 (7th Cir. 2019))). Moreover, although this case arises in the sentencing context, it must be emphasized that the domestic battery charge was never subjected to a proceeding in which Mr. Cortero-Roman would be presumed innocent and afforded his Sixth Amendment rights because the state nolle prossed the charge.

dispassionate, and be impartial.  When a court is hostile toward a party or prejudges a case, it improperly strays from its neutral role.

**B.**  **The district court departed from its neutral role, in violation of Mr. Cortero-Roman's due process rights.**

The sentencing court's heavy-handed sentencing of Mr. Cortero-Roman showed that the process lacked fundamental fairness and that the court departed from its neutral role.  Although the district court continued the first sentencing hearing because it was considering an upward variance, two important developments surfaced before the next hearing—the State dropped the battery charge and Mr. Cortero-Roman and Abassian resumed their relationship.  Doc. 66 at 4.

Although neither the government nor Probation changed their recommendation that the district court impose a 14-month sentence, the district court remained unsatisfied.  It decided to call Abassian as a witness, swore her in, and asked her, essentially, whether she was truthful or had lied to law enforcement in her original report.  *Id.* at 4–6 ("[Y]ou told the officers you didn't want to go through this process again. So you stand behind these underlying allegations?").  In other words, the

court effectively gave Abassian a Hobson's choice—either testify against your partner now or admit you had lied to law enforcement. Abassian maintained that her statement to law enforcement was accurate. *Id.* She also said, however, that she believed he could improve himself and had done so. *Id.* Notably, when the court finished questioning Abassian, the prosecutor had no follow up questions. *See id.* at 6.

Despite Abassian resuming her relationship with Mr. Cortero-Roman and expressly stating that she believed he could change and had changed, *id.*, the district court discounted what she said. Instead, it found that she was acting out of fear. *Id.* at 10–11. According to the district court, Mr. Cortero-Roman's family was likely lobbying Abassian, *id.* at 8–9, and Abassian was scared because she had no faith that the state criminal justice system would protect her. *Id.* at 9–11.

The court also expressed that the State failed Abassian by not prosecuting the domestic battery case and said that if it had been the state prosecutor, it would have convinced her to go forward. *Id.* at 11 ("I don't know how a prosecutor could look themselves in the mirror in state court and drop these charges, because I would convince you to go forward

. . . ."). The court therefore concluded that it would do the job no one else would; it was going protect Abassian. *Id.* ("I'm going to be the most unpopular guy in this room. You're not going to get chewed up and spit out again."); *id.* ("I will do everything I can to keep it from happening again."). The court then sentenced Mr. Cortero-Roman to 15 years in prison—an upward variance of more than 1250% above the top his Guidelines range. *Id.*

The district court departed from its neutral role when it sentenced Mr. Cortero-Roman. Mr. Cortero-Roman recognizes that not every act of judicial intervention violates the Due Process Clause. But the district court's decision to call its own fact witness during sentencing and draw speculative assumptions from her testimony to justify an upward variance that was more than 1250% above the top of the Guidelines range was fundamentally unfair.

As explained, there is good reason why courts generally don't call their own witnesses—it is hard for judges to maintain the appearance of impartiality while becoming active participants in summoning witnesses. That concern was fully present here. The district court's decision to call

Abassian as a witness to develop evidence to support an extreme upward variance, as well as its statements about what it would have done had it been the state prosecutor, show that the court effectively assumed the role of both the federal and state prosecutors and departed from its role as a neutral arbiter. The district court's deviation from its neutral role violated Mr. Cortero-Roman's right to due process.

As a final matter, because the Due Process error here is a structural error, there is no need for this Court to inquire into whether the error was harmless; these errors are never harmless. *See Chapman v. California*, 386 U.S. 18, 23 & n.8 (1967) (citing *Tumey v. State of Ohio*, 273 U.S. 510 (1927)). Therefore, because the district court's actions exhibited bias—or at a minimum the appearance of bias—the only permissible course of action is to wipe the slate clean and remand this case for resentencing.

## II. The district court committed plain procedural error when it relied on clearly erroneous facts to impose a sentence that was more than 1250% above the high-end of Mr. Cortero-Roman's Guidelines range.

"If a district court selects a sentence based on a fact for which no record evidence exists, that finding is clearly erroneous, and the sentence is procedurally unreasonable." *United States v. Horta-Alvarez*, 712 F. App'x 913, 915 (11th Cir. 2017) (citing *United States v. Barner*, 572 F.3d 1239 (11th Cir. 2009)). When the district court procedurally errs, remand is appropriate unless this Court determines, based on the entire record, that the error was harmless. "Therefore, where the district court relies on both proper and improper factors in making a sentencing decision," this Court may affirm only if the "'record reflects that the improper factors did not affect or influence the district court's conclusion.'" *Id.* (quoting *United States v. Kendrick*, 22 F.3d 1066, 1069 (11th Cir. 1994)). "But '[i]f [this Court] cannot say so with certainty, remand is necessary.'" *Id.* (quoting *Kendrick*, 22 F.3d at 1069).

Here, the district court selected a sentence based on at least five clearly erroneous facts for which there was no evidence or support in the

record.  Reliance on these erroneous facts, individually and cumulatively, constituted procedural error.  Because these errors prejudiced Mr. Cortero-Roman, this Court should vacate Mr. Cortero-Roman's sentence.

First, the district court found that Abassian actions, including her desire not to go forward with a state court prosecution, were motivated by fear, and second, it found that Mr. Cortero-Roman's family was likely lobbying Abassian.  Doc. 66 at 8–11.  But there is nothing to support those findings.  To the contrary, Abassian asked for leniency because she believed Mr. Cortero-Roman was a changed man.  *Id.* at 6.  The district court, however, discounted her statements—it suggested that she was unwisely surrounding herself with Mr. Cortero-Roman's family, expressed dismay with the state's prosecutorial decisions, and decided that it would protect Abassian.  *Id.* at 8–11.

The district court was clearly guided by its own anecdotal experiences as a lawyer and state court judge and its perception of how domestic violence victims are treated in the state system.  *Id.*  But there is no evidence that, in this case, Abassian was motivated by fear or that Mr. Cortero-Roman's family was lobbying her.  Nor is there any evidence

about any other alleged sex crime investigations or why the State nolle prossed the domestic battery charge.[5]  Rather than inquiring into these topics, the district court simply asked Abassian whether she stood behind the underlying allegations, essentially asking her whether she lied to law enforcement.  *Id.* at 5.  The court then made several speculative assumptions based on her testimony and used those assumptions to justify a substantial upward variance.  The district court's findings, however, both conflict with Abassian's testimony and lack record support and are therefore clearly erroneous.

Third, the district court found that Mr. Cortero-Roman has been committing violent crimes non-stop throughout his adult life.  *Id.* at 10 ("There has not been a time period in his adult life where he hasn't been committing crimes, not just crimes but violent crimes.").  But that is not true.  In fact, although Mr. Cortero-Roman has a criminal history, he has only three criminal history points based on one prior nonviolent reentry

---

[5] Other than Abassian's statement in the police report, there is no information in the presentence report showing that Mr. Cortero-Roman has been arrested or investigated for any other incidents involving Abassian.

offense.  Moreover, Mr. Cortero-Roman, who was 41 years old at the time of this offense, had no convictions throughout his 30s.  His last offense, the nonviolent reentry offense just mentioned, occurred when he was 28, and his last conviction for a "violent" offense was a misdemeanor battery conviction when he was 24 years old for which we have no information about the underlying facts.  *See* Doc. 51 at 9–11.  There is also nothing in the record showing Mr. Cortero-Roman was convicted of any offenses while in Mexico.  To the contrary, the record shows he owned his own businesses while in Mexico and only left the country to escape the threat of violence.  *See id.* at 17; Doc. 46-1 at 1.  Thus, Mr. Cortero-Roman has not been committing violent crimes his entire adult life.  The district court's contrary finding, on which it relied to support a substantial upward variance, lacks support in the record and is therefore clearly erroneous.

Fourth, the district court implicitly found that Mr. Cortero-Roman will be deported, and fifth, it explicitly found that he will illegally return to the country again and commit crimes.  Doc. 49 at 25–26 ("I know that whatever I do here, when you eventually finish your sentence, if you're

not allowed back in, you're just coming back in, and when you come back in, you're going to do what you've always been doing, commit crimes."). However, as Stoller, a board-certified immigration attorney testified, an immigration official may withhold his removal if the official believes Mr. Cortero-Roman has a reasonable fear of harm because of his race, religion, nationality, political belief, or membership in particular social group. *Id.* at 9–11. And as Merino, his lawyer from Mexico, explained in a letter, Mr. Cortero-Roman left Mexico because he was scared for his life. Doc. 46-1 at 1–2. Thus, it is unclear whether immigration officials would deport Mr. Cortero-Roman. *See United States v. Velasquez-Velasquez*, 524 F.3d 1248, 1253 (11th Cir. 2008) ("[A] judge may not impose a more severe sentence than he would have otherwise based on unfounded assumptions regarding an individual's immigration status."). And even if officials deported Mr. Cortero-Roman, there is no basis to speculate that he is simply going to illegally reenter the country again. Further, if he did reenter the country again, it is also speculation to assume he will commit more crimes. Because the district court's findings relied on unsupported speculation, they are clearly erroneous.

The district court's errors are also plain. It is "clear" and "obvious" based on Supreme Court and this Court's precedent that a district court cannot select a sentence based on facts for which no record evidence exists. *See Horta-Alvarez*, 712 F. App'x at 915 (citing *Barner*, 572 F.3d at 1251, and *Kendrick*, 22 F.3d at 1069); *see also Davis v. United States*, 140 S. Ct. 1060, 1061 (2020) ("The test of Rule 52(b) does not immunize factual errors from plain-error review."). Moreover, individually and cumulatively, these errors prejudiced Mr. Cortero-Roman because the district court relied on them to justify an extreme upward variance of more than 1250% above the top of the Guidelines range. Without these errors, there is a reasonable chance Mr. Cortero-Roman would have received a lower sentence. *See United States v. Hawkins*, 934 F.3d 1251, 1267 (11th Cir. 2019). This Court should therefore exercise its discretion to correct these errors and remand this case for resentencing. After all, what reasonable citizen wouldn't have a "rightly diminished view of the judicial process and its integrity if the court refused to correct [these] error[s]." *Id.* at 1268.

III. **The district court's upward-variance sentence, which was more than 1250% above the high-end of the Guidelines range, is substantively unreasonable.**

District courts must impose sentences that are sufficient—but not greater than necessary—to comply with the factors and purposes set forth in 18 U.S.C. § 3553(a)(2), which include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public. The district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable Guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victim. *Id.*

Although district courts have considerable discretion in applying these factors and imposing a sentence, a district court abuses that discretion when it: (1) fails to consider relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering

the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). "As for the third way that discretion can be abused, a district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably." *Id.* This Court will vacate a district court's sentence only if it is left with a definite and firm conviction that the district court committed a clear error of judgment in weighing the factors. *Id.* at 1189–90.

A district court must justify any variance from the Guidelines range. The greater the variance, the more compelling the justification must be. *Gall v. United States*, 552 U.S. 38, 40 (2007). This Court gives a district court's decision to impose a variance great deference if the case differs from the typical case in which the Sentencing Commission intends the Guideline to apply. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). But the Court will more closely scrutinizes a district court's variance in an ordinary, mine-run case. *Id.*

Mr. Cortero-Roman's case is an ordinary, mine-run illegal reentry case. "A mine-run case is not a theoretical, minimally culpable offense; it is a normal case under the governing Guidelines range, which is

calculated to incorporate the crime at issue, the offense level, and the criminal history category based on prior offenses." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020).

Mr. Cortero-Roman's instant offense and criminal history score reflect, in many ways, the typical illegal reentry case. For example, although Mr. Cortero-Roman's criminal history includes illegal reentry offenses and other state convictions, so do most reentry cases. *See id.* at 755 ("According to the United States Sentencing Commission, 92% of illegal reentry offenders have at least one prior conviction . . . ."); *see also id.* at 757 (noting that the average illegal reentry offender has 3.2 deportations). In fact, more than half of illegally reentry offenders receive enhancements for having a prior conviction (other than illegal reentry), and Mr. Cortero-Roman did not.[6] Further, most reentry offenders have a criminal history category of II or III, and so did Mr.

---

[6] *See* U.S. Sentencing Comm'n, Quick Facts: Illegal Reentry Offenses, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Illegal_Reentry_FY21.pdf

Cortero-Roman.[7]  Notably, the defendant in *Perez-Rodriguez* had the same Guideline range (8-to-14 months) and criminal history category (II) as Mr. Cortero-Roman, and the Sixth Circuit found that a *two-year* prison sentence was substantively unreasonable; Mr. Cortero-Roman received a *15-year* prison sentence.  960 F.3d at 752, 757–58.  Thus, Mr. Cortero-Roman's case is a mine-run illegal reentry case, and because it is, this Court must scrutinize more closely whether the district court had a compelling justification for its extreme upward variance.  *See Gall*, 552 U.S. at 40; *Kimbrough*, 552 U.S. at 109.[8]

When sentencing Mr. Cortero-Roman, the district court mainly relied on his criminal history and its desire to protect Abassian.  *See* Docs. 49, 66.  As explained above, the district court erred by both calling

---

[7] *Id.*

[8] The government may argue that this is not a mine-run case because the court considered Mr. Cortero-Roman's domestic battery allegations, but that does not remove Mr. Cortero-Roman's reentry case from the mine-run of illegal reentry cases.  And even if Mr. Cortero-Roman's case were not a mine-run case, as explained below, the district court's upward variance of more than 1250% above the top of the Guidelines range is still unreasonable.

Abassian and making unsupported and speculative factual findings based on her testimony. That therefore leaves the district court's finding that Mr. Cortero-Roman was a dangerous person because of his criminal history. As an initial matter, and as also explained above, the district court misconstrued his criminal history, inaccurately believing that Mr. Cortero-Roman committed violent crimes non-stop his entire adult life.

That aside, the district court's myopic focus on his criminal history, to the exclusion of other factors, was unreasonable. To be sure, a district court can choose how much weight to place on each statutory sentencing factor. *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). But by focusing on Mr. Cortero-Roman's actual and alleged criminal history, without providing any other justification as to the need to deviate more than 1250% above the high end of the Guidelines range, the district court abused its discretion. *United States v. Lopez*, 343 F. App'x 484, 486 (2009) (holding that an upward variance of almost 50% above the high end of the Guideline range was substantively unreasonably when the district court focused only on Lopez's criminal history without providing any other justification for the variance). Notably, the variance here is far

more severe, and thus far less justifiable and reasonable, than the variance in *Lopez*.

Finally, even if the court did not err in the factors it considered, it still imposed a sentence that was far greater than necessary to accomplish the statutory purposes of sentencing. As explained, the greater the variance, the more compelling the justification must be. *Gall*, 552 U.S. at 40. That is especially true in a mine-run case like this one.

In fact, in 2021, the average sentence for all illegal reentry offender was 13 months, and only about 1.4% of offenders received upward variances.[9] Moreover, in that 1.4% of cases, the average upward variance was only 74.6%; Mr. Cortero-Roman's upward variance was 1250% above the top of his Guideline range.[10] That substantial and extreme nature of the variance is all the more notable considering that even Probation and the government recommended only a 14-month sentence. *See United States v. Ochoa-Molina*, 664 F. App'x 898, 901 (11th Cir. 2016)

---

[9] *See supra* n.6.

[10] *Id.*

(concluding that a 73-month sentence was unreasonable when, among other things, "the district court's sentence was three months higher than even the 70-month [within Guidelines] sentence the government reluctantly recommended").

Thus, all this together shows that even if an upward variance may have been appropriate, the type of extreme upward variance imposed by the district court was not. Because the district court erred in considering and balancing the proper factors, this Court should vacate Mr. Cortero-Roman's sentence and remand this case for resentencing.

## IV. This Court should reassign the case to another judge on remand.

This Court may "order reassignment of a criminal case to another district judge as part of [its] supervisory authority over the district courts in this Circuit." *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989) (citing 28 U.S.C. § 2106). When there is no actual bias, this Court considers the following three factors to determine whether to reassign a case: "(1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether assignment is

appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment." *United States v. Gupta*, 572 F.3d 878, 891 (11th Cir. 2009) (quoting *Torkington*, 874 F.3d at 1447).

In this particular case, because the judge departed from his role of neutrality and made several factual findings that lacked support in the record, his continued participation presents a significant risk of undermining the public's confidence in the proceedings. *See Torkington*, 874 F.2d at 1446 ("Reassignment is appropriate where the trial judge has engaged in conduct that give rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public."). Indeed, even assuming the district court judge was impartial, there was, at a minimum, the appearance he was not, which is an equally justifiable basis for reassignment. *Id.* ("Reassignment may be appropriate, for example, if a judge conducts a trial in a manner that creates the appearance that he is or may be unable to perform his role in an unbiased manner."); *id.* at 1447 ("We must preserve not only the reality but also the appearance of a proper functioning of the judiciary as a neutral,

impartial administrator of justice."). To, at the very least, preserve the public's perception of a fair and impartial judiciary, this Court should reassign this case to a different district court judge for resentencing.

## CONCLUSION

For the above reasons, Mr. Cortero-Roman respectfully requests that this Court vacate his sentence and remand this case for resentencing in front of a different judge.

Respectfully submitted,

A. Fitzgerald Hall, Esq.
Federal Defender

*/s/ Conrad Benjamin Kahn*
Conrad Benjamin Kahn, Esq.
Assistant Federal Defender
Appellate Division
Florida Bar No. 104456
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-6338
Email: Conrad_Kahn@fd.org

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,605 words, excluding the parts exempted by Fed. R. App. P. 32(f).

*/s/ Conrad Benjamin Kahn*
Conrad Benjamin Kahn
Counsel for Mr. Cortero-Roman

**CERTIFICATE OF SERVICE**

I certify that on April 17, 2023, this brief was filed using CM/ECF, which will automatically send a copy to Assistant United States Attorney Michelle Thresher Taylor.

*/s/ Conrad Benjamin Kahn*
Conrad Benjamin Kahn
Counsel for Mr. Cortero-Roman